**EGGNATZ, LOPATIN & PASUCCI, LLP**
Joshua H. Eggnatz, Esq.
Fla. Bar No.: 0067926
Michael J. Pascucci, Esq.
Fla. Bar No.: 0083397
5400 S. University Drive, Suite 417
Davie, Florida 33328
Tel: (954) 889-3359
Fax: (954) 889-5913
Email: jeggnatz@elplawyers.com

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| JUAN ENDARA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AUTOMATIC DATA PROCESSING, INC.; FIRST DATA CORPORATION; META FINANCIAL GROUP, INC.®; METABANK™; THE WENDY'S COMPANY; WENDY'S RESTAURANTS, LLC; WENDY'S INTERNATIONAL, INC.; WENDY'S OF N.E. FLORIDA, INC.; and JOHN DOES #1-10 (the name John Doe being fictitious, as the true names are presently unknown),<br><br>Defendants. | Case No.  6:16-cv-1032-ORL-40DAB<br>_____<br><br><br><u>**CLASS ACTION COMPLAINT**</u><br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Juan Endara ("Plaintiff"), on behalf of himself and all others similarly situated (the "Class," as defined below), by and through his undersigned attorneys, hereby files this Class Action Complaint and states as follows:

1

**INTRODUCTION**

1. Plaintiff brings this proposed class action against defendants Automatic Data Processing, Inc. ("ADP"); First Data Corporation; Meta Financial Group, Inc.®; MetaBank™; The Wendy's Company; Wendy's Restaurants, LLC; Wendy's International, Inc.; and Wendy's of N.E. Florida, Inc. (collectively, "Defendants"),[1] seeking redress for Defendants' unjust, unfair, and deceptive practices in connection with payroll debit cards Defendants issued to, and serviced for, Wendy's employees (the "Payroll Cards").

2. A payroll debit card is a type of stored value (or prepaid) card that allows employees to access their pay through various means, depending on the particular product. Employers deposit wages on the payroll debit card via direct deposit, and the employee may use the payroll debit card to make, for example, point-of-sale purchases at retailers, from catalogs, or on the Internet, as well as to withdraw money from ATMs, without opening or maintaining a checking account.[2]

3. Many payroll debit cards are Visa®- or MasterCard®-branded.[3]

4. The United States Office of the Comptroller of the Currency ("OCC") has warned that payroll debit cards can be the source of "unfair or deceptive practices in payroll systems."[4]

5. Defendants provided Plaintiff with a Payroll Card at a time when Wendy's

---

1. This Complaint refers to The Wendy's Company; Wendy's Restaurants, LLC; Wendy's International, Inc.; and Wendy's of N.E. Florida, Inc., collectively, as "Wendy's."
2. *See* OFFICE OF THE COMPTROLLER OF THE CURRENCY, PAYROLL CARDS: AN INNOVATIVE PRODUCT FOR REACHING THE UNBANKED AND UNDERBANKED (2005), *available at* http://occ.gov/topics/community-affairs/publications/insights/insights-payroll-cards.pdf.
3. *Id.*
4. OFFICE OF THE COMPTROLLER OF THE CURRENCY, OCC ADVISORY LETTER AL 2004-6 (2004), *available at* http://www.occ.gov/static/news-issuances/memos-advisory-letters/2004/advisory-letter-2004-6.pdf (providing general guidance on payroll debit cards and warning that failing to make full, fair, and accurate disclosure of material terms associated with card use could be unfair or deceptive).

employed Plaintiff.[5]

6. Prior to the occasion on which Plaintiff (or Defendants) completed the first electronic fund transfer to be conducted using Plaintiff's Payroll Card, Defendants did not prominently and clearly disclose to Plaintiff the fees Defendants charged for use of the Payroll Card.

7. Defendants thereafter charged[6] Plaintiff fees to access the wages he had earned, thereby failing to provide Plaintiff the full amount of his wages in a form that was **negotiable and payable in cash, on demand, without discount.**

8. Plaintiff brings this action to stop Defendant's unjust, unfair, and deceptive practice.

## THE PARTIES

9. Plaintiff Juan Endara currently resides in the state of Michigan. At all relevant times giving rise to this Complaint, Plaintiff resided in Orlando, Florida and worked at the Wendy's restaurant located in Orlando, Florida.

10. Defendant Automatic Data Processing, Inc., is a provider of payroll services.[7] ADP is a Delaware corporation with its principal executive offices located at One ADP Boulevard, Roseland, New Jersey 07068. ADP has offices throughout the United States and throughout Florida, including an office located at 5728 Major Boulevard, Orlando, Florida 32819.[8]

---

5. More specifically, Wendy's of N.E. Florida, Inc., directly employed Plaintiff.
6. Plaintiff will ascertain through discovery precisely which Defendant(s) charged the fees at issue.
7. Payroll Services From ADP The Leader In Payroll, http://www.adp.com/solutions/employer-services/payroll.aspx (last visited Sept. 5, 2013).
8. Office Locations | ADP, http://www.adp.com/Home/office-locations.aspx#FL (last

11. Defendant First Data Corporation operates the "Money Network," which, according to Plaintiff's Payroll Cards, has an address of 7000 Goodlett Farms Parkway, Suite 200, Cordova, Tennessee 38016-4916, and a phone number of 1-866-402-1237. First Data Corporation is a Delaware corporation with its headquarters located at 5565 Glenridge Connector Northeast, Suite 2000, Atlanta, Georgia 30342.

12. Defendant Meta Financial Group, Inc®, is a Delaware corporation with its principal place of business located at 5501 South Broadband Lane, Sioux Falls, South Dakota 57108.

13. Defendant MetaBank™ issued the Payroll Cards provided to Plaintiff. MetaBank™ is a federally chartered savings bank and is a wholly owned subsidiary of defendant Meta Financial Group, Inc®. MetaBank™ is headquartered at 121 East Fifth Street, P.O. Box 1307, Storm Lake, Iowa 50588.

14. Defendant The Wendy's Company touts itself as "the world's third largest quick-service hamburger company."[9] The Wendy's Company is a Delaware corporation with its principal executive offices located at One Dave Thomas Boulevard, Dublin, Ohio 43017.

15. Defendant Wendy's Restaurants, LLC, is a 100% owned subsidiary holding company of The Wendy's Company.[10] Wendy's Restaurants, LLC, is a Delaware limited liability company with its principal executive offices located at One Dave Thomas Boulevard, Dublin, Ohio 43017. At the present time, the individual officers, owners, and directors of Wendy's Restaurants, LLC is not known. However, based upon information and belief, none of

---

visited Sept. 5, 2013).
9.   Our Company | About Wendy's, http://www.aboutwendys.com/Our-Company/ (last visited Sept. 5, 2013).
10 The Wendy's Co., Quarterly Report (Form 10-Q), at 21 (Aug. 7, 2013), *available at* http://www.sec.gov/Archives/edgar/data/30697/000003069713000013/twc10qq2-13.htm.

4

Wendy's Restaurants, LLC's officers, owners or directors are citizens of Florida.

16. Defendant Wendy's International, Inc., is the principal 100% owned subsidiary of Wendy's Restaurants, LLC.[11] Wendy's International, Inc., is an Ohio corporation with its principal executive offices located at P.O. Box 256, 4288 West Dublin-Granville Road, Dublin, Ohio 43017.

17. Defendant Wendy's of N.E. Florida, Inc., is a Florida corporation with its principal place of business at One Dave Thomas Boulevard, Dublin, Ohio 43017.

18. Plaintiff does not know the exact identities of defendants "John Does #1–10" at this time. "John Does #1–10" are (i) entities who employed Plaintiff and/or other members of the putative Class and/or (ii) entities who were responsible for the issuance of Payroll Cards to Plaintiff and/or other members of the putative Class and for the servicing of the Payroll Cards so issued.

## JURISDICTION AND VENUE

19. This Court has jurisdiction over the subject matter of this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). The proposed Class includes residents from all fifty states and the Class of plaintiffs necessarily includes citizens of states different from the state of citizenship of any defendant. Plaintiff alleges that the total claims of individual members of the proposed Class are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs.

20. This Court has personal jurisdiction over Defendants for reasons including but not limited to the following: Plaintiff's claims arise out of Defendants' conduct within the State of Florida.

---

11 *Id.*

21. Venue is proper in this District by virtue of 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to Plaintiff's and the Class members' claims occurred in this District, since Defendants issued and serviced Plaintiff's Payroll Cards in this District.

## SUBSTANTIVE ALLEGATIONS

22. Starting in 2008, and through 2012, Wendy's employed Plaintiff as a non-exempt, hourly-paid "Crew Member" at a Wendy's fast food restaurant located in Orlando, Florida.

23. Throughout the term of his employment, Plaintiff performed all of the duties and obligations required of him.

24. Plaintiff's nominal pay rate as a Wendy's employee began at $7.65 an hour.

25. Plaintiff's nominal pay rate as a Wendy's employee was $8.55 an hour at the time he left employment with Wendy's.

26. Until 2009, Plaintiff received his wages from Wendy's in the form of a paper check.

27. Plaintiff never authorized Wendy's to deposit his wages directly into a checking account via a "direct deposit" transfer.

28. In 2008, Wendy's, then operating under the name Wendy's/Arby's Group, Inc.,[12] began a pilot payroll debit card program at Arby's locations in Atlanta, Georgia, and in California, with plans to expand the program to all Wendy's and Arby's locations.[13]

29. In 2009, the director of payroll for Wendy's in Atlanta speculated, based on the

---

12. The Wendy's Co., Quarterly Report (Form 10-Q), at 3 (Aug. 11, 2011), *available at* http://www.sec.gov/Archives/edgar/data/30697/000003069711000054/twc_wr10qq22011.htm ("Until July 5, 2011, The Wendy's Company was known as Wendy's/Arby's Group, Inc. and Wendy's Restaurants[, LLC] was known as Wendy's/Arby's Restaurants, LLC.").
13. Carol Patton, *Paperless Money*, Hum. Resources Executive, Sept. 2, 2009, *available at* http://www.hronline.com/HRE/print.jhtml?id=249835746.

savings generated by the Arby's payroll debit card program, that the Wendy's payroll debit card program could save the company $1 million per year.[14]

30. In 2009, Wendy's stopped issuing paper paychecks to employees and, if an employee did not already authorize direct deposit prior to the change, Wendy's compelled the employee to accept a Payroll Card in lieu of a paper check as the delivery mechanism for his wages. During this transition, Wendy's notified Plaintiff and other Class members of the switch from paper checks to payroll cards, and only offered and emphasized the payroll card option. There was no reminder of Wendy's direct deposit option and Plaintiff was never informed of an opt-out option even though Plaintiff was not a new hire and worked prior to the transition. Plaintiff and Class members had no notice of other options to obtain their wages and were forced to use the payroll debit card program as the only access to their wages.

31. Due to increasing use of payroll debit cards, the OCC, which oversees banking institutions, issued guidance in 2004 to all national banks concerning payroll debit cards.[15]

32. In its 2004 guidance, the OCC warned, *inter alia*, that failing to make full, fair, and accurate disclosure of material matters "might directly or indirectly support unfair or deceptive practices in payroll systems."[16]

33. Defendants engaged in unfair and deceptive conduct by failing to provide full, fair, and accurate disclosure to Plaintiff and the Class members concerning the Payroll Cards. Plaintiff received his payroll debit card at work and the card was not accompanied with any information packet/pamphlet, user agreement, disclosures, or employee training program. Plaintiff did not receive any terms and conditions with the card. Class members similarly did not

---

14. *Id.*
15. Office of the Comptroller of the Currency, OCC Advisory Letter AL 2004-6.
[16] *Id.* at 2.

7

receive adequate information or disclosure with their payroll debit card.

34. Each of the payroll debit cards had an activation sticker. Plaintiff and Class members activated their payroll debit cards through a telephonic activation system. There was no full, fair, and accurate disclosure during the activation process regarding any fees associated with the card.

35. As such, Defendants did not prominently and clearly inform Plaintiff of the fees and charges associated with use of the Payroll Card prior to the occasion on which Plaintiff (or Defendants) completed the first electronic fund transfer to be conducted using Plaintiff's Payroll Card. Defendant similarly failed to make such disclosure to the Class members.

36. Defendants deducted fees from Plaintiff's and the Class members' wages without first providing notice of the fees or first obtaining Plaintiff's and the Class members' authorization to charge the fees.

37. Furthermore, when Plaintiff and the Class members withdrew cash from an automated teller machine ("ATM") (or as part of a cash-back debit purchase) using the Payroll Cards, they could only withdraw their wages in $20 increments.

38. In connection with the Payroll Card program, Defendants have maintained a corporate policy of charging fees to Plaintiff and the Class members for obtaining their wages.

39. As described in the preceding paragraphs, Defendants did not provide Plaintiff and the other Class members with full access to the wages they had earned. Instead, Defendants improperly siphoned off portions of those wages via fees for use of the Payroll Cards.

40. As described in the preceding paragraphs, Defendants failed to provide Plaintiff and the Class members the full amount of their wages in a form that was **negotiable and payable** in cash, on demand, without discount.

41. As described in the preceding paragraphs, Defendants transferred payroll costs to Plaintiff and Class members by forcing upon them a payroll debit card program that shifted user fees to Plaintiff and Class members while reducing payroll costs to Defendants.

## CLASS ACTION ALLEGATIONS

42. Pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself and a proposed class defined as follows (the "Class"):

> All persons in the United States and its territories:
> (i) to whom Defendants issued a Payroll Card,
> (ii) to whom Defendants did not provide, prior to the completion of the first electronic fund transfer to be conducted using the Payroll Card, prominent and clear notice of the fees associated with use of the Payroll Card, *and*
> (iii) whom Defendants thereafter charged fees for use of the Payroll Card.

43. Excluded from the Class are Defendants; any entity in which Defendants have a controlling interest; any officers or directors of Defendants; and Defendants' legal representatives, heirs, successors, and assigns. Also excluded are governmental entities and the judicial officer to whom this case is assigned and any immediate family members thereof.

44. **Numerosity** – Fed. R. Civ. P. 23(a)(1): The size of the Class is so large that joinder of all Class members herein is impracticable. Plaintiff does not know the exact number of Class members, but upon information and belief, the Class numbers in the thousands, if not tens of thousands. The precise number of Class members and their addresses should be ascertainable from records in the possession of one or more Defendants. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include United States Mail, electronic mail, Internet postings, and/or published notice.

45.     **Commonality and Predominance** – Fed. R. Civ. P. 23(a)(2), (b)(3): There are questions of law and fact common to the Class. These questions predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

    a.    whether Defendants' payment practices as described herein violate Florida Statutes § 532.01;

    b.    whether Defendants' practices violate the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* ("FDUTPA"), because they are unfair;

    c.    whether Defendants had a duty to inform Plaintiff and the Class members prominently and clearly of the fees associated with use of their Payroll Cards prior to the occasion on which Plaintiff or a Class member (or Defendants) completed the first electronic fund transfer to be conducted using the Payroll Card;

    d.    whether Defendants breached the duty identified in paragraph 45.c above; and

    e.    whether Defendants' actions described herein unjustly enriched them, to the detriment of Plaintiff and the other Class members.

46.     Defendants engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class members. Similar or identical statutory or common law violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. Moreover, the common questions will yield common answers.

47.     **Typicality** – Fed. R. Civ. P. 23(a)(3): Plaintiff's claims are typical of the claims of the other members of the Class because, *inter alia*, prior to the occasion on which Plaintiff (or Defendants) completed the first electronic fund transfer to be conducted using Plaintiff's Payroll Card, Defendants did not provide Plaintiff with prominent and clear disclosure of the fees

associated with use of his Payroll Card, and Defendants thereafter charged Plaintiff fees to access his wages using the Payroll Card. Further, there are no defenses available to Defendants that are unique to Plaintiff.

48. **Adequacy of Representation** – Fed. R. Civ. P. 23(a)(4): Plaintiff is an adequate representative of the members of the Class because his interests do not conflict with the interests of the other members of the Class he seeks to represent. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendants on behalf of himself and all other Class members. Plaintiff has selected counsel that is competent and experienced in complex class action litigation. Plaintiff and his counsel will fairly and adequately protect the interests of the Class.

49. **Superiority** – Fed. R. Civ. P. 23(b)(3): The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages suffered by individual Class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendants' conduct. Further, it would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims that might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single

court. Plaintiff is unaware of any other litigation or class action already pending against Defendants for the conduct complained of herein.

50. The Class may be certified under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

51. The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants.

52. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or would substantively impair or impede their ability to protect their interests.

53. Defendants' conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### COUNT I
**(Violation of Fla. Stat. § 532.01 *et seq.*)**

54. Plaintiff repeats each and every allegation contained in the paragraphs 1 through 53 above and incorporates such allegations by reference herein.

55. Florida Statutes § 532.01 provides that "[a]ny…payroll debit card…must be negotiable and payable in cash, on demand, without discount…."

56. In violation of Section 532.01, as described herein, Defendants provided Payroll Cards to Plaintiff and the Class members that were neither negotiable nor payable in cash, on demand, without discount. Defendants compelled Plaintiff and the other Class members to obtain their wages at a discount because Defendants charged Plaintiff and the Class members unauthorized fees when they used their Payroll Cards.

57. Due to Defendants' violation of Section 532.01 *et seq.*, Plaintiff and Class members are entitled to recover compensatory damages, including reasonable attorneys' fees.

## COUNT II
### (Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*)

58. Plaintiff repeats each and every allegation contained in the paragraphs 1 through 53 above and incorporates such allegations by reference herein.

59. Defendants' practice of supplying the Payroll Cards at issue was a "consumer transaction" within the scope of the FDUTPA.

60. Plaintiff has not previously been engaged in the business of franchise ownership or payroll services.

61. Acts or practices are unfair under the FDUTPA if they cause consumers substantial injury that the consumers cannot reasonably avoid and that is not outweighed by countervailing benefits to consumers or competition.

62. By charging Plaintiff and the Class members undisclosed fees for Payroll Card use (in the manner described above), Defendants committed, and continue to commit, unfair and deceptive trade practices that benefit Defendants.

63. Defendants' practice of charging undisclosed fees for Payroll Card use (in the manner described above) has caused Plaintiff and the Class members substantial injury that they

could not have reasonably avoided and that was not outweighed by countervailing benefits to consumers or competition.

64. Defendants have been unjustly enriched as a result of their unlawful practices.

65. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

66. Due to Defendants' FDUTPA violations, Plaintiff and Class members are entitled to recover compensatory damages, including attorney's fees.

### COUNT III
### (Negligence)

67. Plaintiff repeats each and every allegation contained in the paragraphs 1 through 53 above and incorporates such allegations by reference herein.

68. Defendants maintained a policy of charging Plaintiff and the other Class members fees for using their Payroll Cards without providing prominent and clear notice of the fees prior to the occasion on which Plaintiff or a Class member (or Defendants) completed the first electronic fund transfer to be conducted using the Payroll Card.

69. Defendants had a duty to disclose prominently and clearly to Plaintiff and the Class members the fees Defendants charged for use of the Payroll Cards, prior to the occasion on which Plaintiff or a Class member (or Defendants) completed the first electronic fund transfer to be conducted using the Payroll Card.

70. A reasonably prudent employer that uses Payroll Cards to provide compensation to employees would prominently and clearly disclose all fees associated with use of the Payroll Cards to its employees, prior to the occasion on which the first electronic fund transfer to be conducted using the Payroll Card was completed.

71. A reasonably prudent financial institution that maintains accounts associated with

Payroll Cards would prominently and clearly disclose all fees associated with use of the Payroll Cards to the Payroll Card users, prior to the occasion on which the first electronic fund transfer to be conducted using the Payroll Card was completed.

72. A reasonably prudent person that issues Payroll Cards would prominently and clearly disclose all fees associated with use of the Payroll Cards to the Payroll Card users, prior to the occasion on which the first electronic fund transfer to be conducted using the Payroll Card was completed.

73. A reasonably prudent Payroll Card servicing institution would prominently and clearly disclose all fees associated with use of the Payroll Cards to Payroll Card users, prior to the occasion on which the first electronic fund transfer to be conducted using the Payroll Card was completed.

74. Defendants breached the duty identified above by failing to disclose prominently and clearly to Plaintiff and the Class members the fees associated with use of the Payroll Cards, prior to the occasion on which Plaintiff or a Class member (or Defendants) completed the first electronic fund transfer to be conducted using the Payroll Card.

75. Defendants' breach actually and proximately caused Plaintiff and the Class members to incur damages in the form of undisclosed, unanticipated fees for their use of the Payroll Cards.

76. Plaintiff and the Class members could not reasonably have avoided the fees Defendants charged for their use of the Payroll Cards.

## COUNT IV
**(Unjust Enrichment)**
**(In the Alternative)**

77. Plaintiff repeats each and every allegation contained in the paragraphs 1 through

53 above and incorporates such allegations by reference herein.

78. Plaintiff brings this claim in the alternative to the claims alleged above.

79. Defendants, through the acts and omissions described herein, are in possession of money that is the rightful property of Plaintiff and the Class members.

80. As a result, Defendants have been unjustly enriched by their activities, and Plaintiff and the other Class members have suffered a detriment.

81. By using Defendants' Payroll Cards and paying the associated unanticipated, unconsented-to fees, Plaintiff and the Class members conferred a tangible economic benefit upon Defendants. Plaintiff and the Class members would have expected remuneration from Defendants at the time they conferred the benefit had they been appropriately informed of the fees Defendants charged for use of the Payroll Cards.

82. Defendants know Plaintiff and the other Class members conferred the above-described benefits upon Defendants.

83. Defendants have accepted the benefits conferred in the form of fees charged to Plaintiff and the Class members.

84. Defendants were, and continue to be, unjustly enriched at the expense of Plaintiff and the Class members.

85. Defendants' continued collection and retention of the benefits conferred upon them by Plaintiff and the other Class members is unjust and inequitable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on behalf of himself and the Class as follows:

A. An order certifying the proposed Class, appointing Plaintiff as Class

representative, and appointing Plaintiff's undersigned counsel as Class counsel;

  B.  A declaration that Defendants are financially responsible for notifying Class members of the pendency of this suit;

  C.  A declaration that Defendants have committed the violations of law alleged herein;

  D.  An award of restitution and/or disgorgement of profits to Plaintiff and the other Class members;

  E.  An order enjoining Defendants' unlawful and deceptive acts and practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.*;

  F.  An award of damages to Plaintiff and the other Class members as a result of Defendants' violation of FDUTPA;

  G.  An award of statutory damages to Plaintiff and the Class members in the maximum amount provided by law;

  H.  An award of punitive damages to Plaintiff and the Class members in accordance with proof and in an amount consistent with applicable precedent;

  I.  An order awarding Plaintiff and the Class members the reasonable costs and expenses of suit, including their attorneys' fees; and

  J.  Any further relief that the Court may deem appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all claims so triable.

DATED:  June 10, 2016    EGGNATZ, LOPATIN & PASUCCI, LLP

              */s/ Joshua H. Eggnatz*
              Joshua H. Eggnatz, Esq.
              Fla. Bar No.: 0067926
              5400 S. University Drive, Suite 417

Davie, Florida 33328
Tel.: (954) 889-3359
Fax: (954) 889-5913

C.K. Lee, Esq. (*Pro Hac Vice* forthcoming)
LEE LITIGATION GROUP, PLLC
30 East 39th Street, Second Floor
New York, New York 10016
Tel.: 212-465-1188
Fax: 212-465-1181

Kim E. Richman, Esq. (*Pro Hac Vice* forthcoming)
THE RICHMAN LAW GROUP
81 Prospect Street
Brooklyn, New York 11201
Tel.: (212) 687-8291
Fax: (212) 687-8292

*Trial Counsel for Plaintiff*
*and the Proposed Class*